UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**PROTECTIVE LIFE INSURANCE COMPANY**,

Plaintiff,

v.

**CALVIN HARRIS, ET AL.**,

Defendants.

Case No.  11-cv-04027-YGR

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 106, 109

Now before the Court are cross-motions for summary judgment filed by defendants Calvin Harris ("Harris") and Cherie Cabral ("Cabral"), opposed parties in this interpleader action seeking $500,000 in life insurance proceeds deposited with the Clerk of this Court by Protective Life Insurance Company.  (Dkt. Nos. 106, 109.)  The dispute stems from the death of Linda Harris (the "decedent") and her prior attempt to reassign the benefits of the policy from her husband, Harris, to their daughter, Cabral.  After briefing, the Court heard oral argument on the motion on June 9, 2015.  Thereafter, the parties submitted supplemental briefing.  (Dkt. Nos. 126-29.)

Having carefully considered the papers submitted, the record in this case, and the arguments of counsel, and good cause shown, the Court hereby **GRANTS** Harris's motion for summary judgment and **DENIES** that of Cabral.

**I.   BACKGROUND**

Harris and the decedent were apparently married at all relevant times.  In December 1998, C.E. Harris, Incorporated, doing business as Harris Electric ("C.E. Harris"), was incorporated in the State of California.  (Cabral SSF No. 1.)[1]  The parties dispute whether the business was owned

---

[1] "SSF," as used herein, refers to the parties' charts of facts, including undisputed material facts.  "Cabral SSF" refers to Docket Number 109-1 and "Harris SSF" refers to Docket Number 115.  Unless otherwise noted, the references to the material facts include the underlying evidence referenced by either party in support of the fact.

1   solely by Harris or by the couple, and dispute whether the decedent was an officer of the

2   corporation. (*See, e.g.*, Cabral SSF No. 2.)

3         On October 13, 2001, Harris submitted an application for the life insurance policy at issue,

4   with the decedent as the insured and C.E. Harris listed as the policy owner. (Cabral SSF No. 4;

5   *see also* Dkt. No. 109-2 at 23.) The policy was issued on December 1, 2001. (Cabral SSF No. 5.)

6   At the time of issuance, the policy apparently listed Harris as the primary beneficiary. (*See* Cabral

7   SSF No. 6; Dkt. No. 109-2 at 23.) Importantly, the policy documents submitted by Harris state

8   that "you" (defined as the designated "owner" listed in the application, unless subsequently

9   modified) "may change the beneficiary while the policy is in force." (Dkt. No. 109 at 14.)

10         The decedent was first diagnosed with cancer in late 2002. (*See* Harris SSF No. 11; Dkt.

11   No. 106 at 4.) According to Cabral, the decedent underwent chemotherapy treatments in 2002,

12   2005, and 2008. (Dkt. No. 106 at 4.) Apparently her condition worsened around 2010. On July

13   13, 2010, she visited her doctor for testing. (Cabral SSF No. 10.) The parties maintain numerous

14   factual disputes as to the extent of the decedent's incapacity during the eleven months between

15   July 2010 and June 2011, when she passed away.

16         On July 2, 2010, the decedent and Harris signed a "service request" form seeking to

17   change the insurance policy's beneficiary from Harris to Cabral. (Harris SSF No. 6.) Harris faxed

18   the form to the insurance company, but apparently unbeknownst at the time to either Harris or the

19   decedent, the transmission failed. (*Id*.)

20         On May 7, 2011, Harris claims he and the decedent changed the July 2, 2010 form by

21   crossing out Cabral's name as the primary beneficiary and reinserting his own. (Harris SSF No.

22   8.) Cabral alleges the decedent's signature on this revision was forged. (*Id*.) In any event, Harris

23   received a letter from Protective Life dated May 20, 2011 indicating he remained listed as the

24   policy's primary beneficiary. (Declaration of Calvin Harris ("Harris Decl."), Dkt. No. 109-2, Ex.

25   5.) Thus, he never bothered to send in the May 2011 revised form. (Harris Decl. ¶ 10.)

26         On June 4, 2011, Linda Harris passed away.

27         On August 17, 2011, Protective Life Insurance Company instituted this interpleader action

28   regarding the life insurance proceeds. (Dkt. No. 1.) Since that time, Cabral and Harris have also

United States District Court
Northern District of California

been involved in contested will proceedings in state court.  The instant motions were filed prior to resolution of the state court case.

## II.     LEGAL STANDARD

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id*.

Where the moving party will have the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e).  The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Anderson*, 477 U.S. at 249-50.  Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists.  *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  A district court may only base a ruling on a motion for summary judgment upon facts that would be admissible in evidence at trial.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P. 56(c).  It is not a court's task "to scour the record in search of a genuine issue of

1   triable fact," but rather the Court is entitled to "rely on the nonmoving party to identify with
2   reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91
3   F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th
4   Cir. 1995)); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.
5   2001) ("The district court need not examine the entire file for evidence establishing a genuine
6   issue of fact, where the evidence is not set forth in the opposing papers with adequate references
7   so that it could conveniently be found.").

## III.   DISCUSSION

Here, Harris has met his initial burden of establishing his entitlement to the funds in question. He submitted the applicable policy documents, which on their face reflect that he was the designated primary beneficiary. (Harris Decl., Ex. 1.) He further submitted a letter from the insurance company dated May 20, 2011, shortly before the decedent passed away, indicating he remained the primary beneficiary and the Harris Family Trust a contingent beneficiary according to Protective Life's records. (Harris Decl., Ex. 5.) Indeed, Cabral concedes that a change of beneficiary was not effectuated pursuant to the insurer's policies. She argues, however, (1) that an exception applies or (2) in the alternative, that the corporation was community property and therefore Harris owed the decedent a fiduciary duty in regards to the treatment of the insurance policy—a corporate asset. Cabral's challenge constitutes the gravamen of the briefing. The Court addresses both arguments in turn.

### A.   *Pimentel* Exception

Generally, "where the contract of insurance provides a method for making a change of beneficiary the insured must follow substantially the method prescribed." *Pimentel v. Conselho Supremo De Uniao Portugueza Do Estado Da California*, 6 Cal. 2d 182, 187 (1936). There are three primary exceptions to this rule: (1) where the insurer waived strict compliance with its rules and issued a revised certificate; (2) "[i]f it is beyond the power of the insured to comply literally with the regulations a court of equity will treat the change as having been made," or (3) "[i]f the insured has pursued the course pointed out by the laws of the [insurer], and has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of

4

equity will treat such certificate as having been made." *Id*. at 187-88. According to Cabral, the third prong is at issue here.

In *Pimentel*, the insured signed the change of beneficiary document on January 20, 1933, "while ill in the hospital from a malady of which he died on April 1, 1933." *Id*. at 187. Prior to his death, he inquired as to whether the change had been effected and was assured that it had been. *Id*. The only "steps left undone were the forwarding of the certificate . . . and the various ministerial actions to be taken by the officers of the insurer." *Id*. Under the facts of that case, the insured was found to have done all that he could to effectuate the change before he died.

Since *Pimentel* was decided, a number of cases have applied the rule set forth therein, typically declining to find an exception to compliance with the insurer's policies. *See, e.g.*, *Prudential Ins. Co. of Am. v. Withers*, 127 F.3d 1106 (9th Cir. 1997) (finding decedent's "actions fell far short of 'complying as far as he [was] able with the rules'" where "[n]o infirmity prevented [him] from understanding or complying with the policy requirements for changing his beneficiary" and, during the seven months between his request and his death, he failed to follow up with a third party as to whether she had submitted the modification on his behalf as instructed); *Manhattan Life Ins. Co. v. Barnes*, 462 F.2d 629, 630-33 (9th Cir. 1972) (finding change did not take effect where insured executed a beneficiary change form 22 months before his death and instructed his employee to file it, but failed to inquire as to whether it had been accomplished, despite lack of evidence that he was "incapacitated in any way" during that time period); *W. Coast Life Ins. Co. v. Clark*, 24 F. Supp. 3d 933, 939 (C.D. Cal. 2014) (finding decedent's arguably intended change not effectuated where the decedent did not (1) attempt to obtain the necessary court order to make the change during his divorce proceedings, or (2) take any steps to institute the change in the eight days following finalization of his divorce before his death, where there was no evidence of incapacitation during that time period); *State Farm Life Ins. Co. v. Brockett*, 737 F. Supp. 2d 1146, 1159 (E.D. Cal. 2010) (finding change not effectuated where decedent completed change form but did not submit it to the insurer, or even arrange to have it sent in by a third party, before his death).

Each of the cases cited involved instances where the deceased individual was personally

5

authorized to change unilaterally the designated beneficiary of the policy in question. *See, e.g.*, *W. Coast Life Ins. Co.*, 24 F. Supp. 3d at 938 ("Decedent, as the policy owner, must have properly effectuated a change of beneficiary naming Kathleen as the primary beneficiary."); *State Farm Life Ins. Co. v. Brockett*, 737 F. Supp. 2d 1146, 1149 (E.D. Cal. 2010) ("The Policy provided that the deceased could make changes to the beneficiary designation by 'sending [the insurer] a request.'") (alteration in original). Here, Cabral concedes the decedent was not unilaterally authorized to change the policy's beneficiary. Rather, according to Cabral, the decedent shared that authority with Harris as the alter egos of the corporation or in the decedent's purported role as a corporate officer. (*See, e.g.*, Dkt. No. 106 at 18 ("As spouses, Calvin and Linda had to mutually agree to execute a change of beneficiary to make this gift of community property, the life insurance, to their only daughter, Cherie.").) Thus, the third prong of the *Pimentel* exception is inapplicable for at least two reasons: (1) it does not apply to corporations; and (2) it does not apply where a change in beneficiary status requires the consent of two individuals and only one dies before the change is effectuated. Cabral does not prevail with this argument.

### B. Fiduciary Duty

Cabral next argues the corporation was community property and therefore Harris owed the decedent a fiduciary duty in connection with the management of corporate assets—including the policy in question. *See, e.g.*, *Maglica v. Maglica*, 66 Cal. App. 4th 442, 448 (1998) (describing California's "fiduciary duty between spouses with regard to the management and control of community assets"). She cites to California Family Code section 1100(d) which governs the duties owed by a spouse managing a community owned corporation to the other spouse. However, section 1101 provides a remedy by one spouse against another only for:

> any breach of the fiduciary duty that results in impairment to the claimant spouse's present undivided one-half interest in the community estate, including, but not limited to, a single transaction or a pattern or series of transactions, which transaction or transactions have caused or will cause a detrimental impact to the claimant spouse's undivided one-half interest in the community estate.

Cal. Fam. Code § 1101. Cabral has not put forth any legal authority establishing her entitlement to assert such a claim derivatively through her mother. Moreover, the claim does not appear to

6

apply to the circumstances at issue here, where Harris was undisputedly the initial beneficiary and therefore his failure to act to change the beneficiary to Cabral did not "result[] in impairment to [the decedent's] present undivided one-half interest in the" policy proceeds. In the absence of any binding authority from Cabral on these points, the Court finds the unsupported argument insufficient to defeat Harris's motion for summary judgment.

As to Cabral's alternative argument that the policy itself was community property, the Court can conceive of a set of circumstances wherein a purported asset of a closely-held corporation was itself community property. For instance, if corporate formalities were not followed and community property was used to purchase the asset, the policy itself might be community property. *See In re Marriage of Valli*, 58 Cal. 4th 1396, 1399 (2014) (finding life insurance policy purchased with community funds during marriage was community property). However, Cabral has failed to put forth sufficient evidence establishing a genuine dispute of material fact as to whether those circumstances are at issue here. The documents provided do not establish the corporation was merely an alter ego of the couple. Instead, Cabral largely relies on: (1) a spare and self-serving declaration (Dkt. No. 114 ¶ 13 (asserting only that "Calvin used CE Harris as a tax shelter and pass through for personal expenses in order to write them off as business expenses for tax purposes")); (2) documents pertaining to Harris's no contest plea in an unrelated wage violation matter as reflected in a hearsay press release and incomplete transcript (Dkt. No. 106, Exs. C-D); and (3) limited third-party deposition testimony consisting primarily of inadmissible hearsay (Dkt. No. 114-10 ("Q: Okay. Did [the decedent] ever indicate to you that she thought that was what [Harris] was doing? A: Well, she—she knew that he was using company money to go on vacations and trips and stuff like that, but that was basically the only thing she ever mentioned and I don't know if you'd call that funneling or not.")). Thus, this alternative argument also fails on the record presented.

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Harris's motion for summary judgment and **DENIES** that of Cabral. Harris shall submit a proposed order regarding the disbursement of funds held by the Clerk and a separate proposed form of judgment, each approved as to form by Cabral

7

and Protective Life Insurance Company, within five (5) business days.

This Order terminates Docket Number 106.

**IT IS SO ORDERED.**

Dated: March 29, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**